IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **BRADLEY KELLY,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Civil No. 14-cv-624-CJP[1] |
| | ) |
| **CAROLYN W. COLVIN,** | ) |
| Acting Commissioner of Social | ) |
| Security, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM and ORDER**

**PROUD, Magistrate Judge:**

In accordance with 42 U.S.C. §405(g), plaintiff Bradley Kelly is before the Court, represented by counsel, seeking judicial review of the final agency decision denying him Supplemental Security Income (SSI) benefits pursuant to 42 U.S.C. §423.

**Procedural History**

Plaintiff initially applied for benefits in May 2011, alleging disability beginning on December 31, 2006. (Tr. 18). The claim proceeded to a hearing before ALJ Stuart T. Janney, who issued an unfavorable decision on February 19, 2013. (Tr.18-27). The Appeals Council denied review, and the decision of the ALJ became the final agency decision. (Tr. 1). Administrative remedies have been exhausted and a timely complaint was filed in this court.

---

[1] This case was referred to the undersigned for final disposition on consent of the parties, pursuant to 28 U.S.C. §636(c).  See, Doc. 15.

**Issues Raised by Plaintiff**

Plaintiff raises the following points:

1. The ALJ erred in making his RFC determination by failing to consider medical findings and opinions that supported plaintiff's claim for benefits.

2. The ALJ erred in his credibility determination.

**Applicable Legal Standards**

To qualify for SSI, a claimant must be disabled within the meaning of the applicable statutes.[2] For these purposes, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. §423(d)(1)(A).**

A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. **42 U.S.C. §423(d)(3).** "Substantial gainful activity" is work activity that involves doing significant physical or mental activities, and that is done for pay or profit. **20 C.F.R. §§ 404.1572.**

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled. The Seventh Circuit Court of

---

[2] The statutes and regulations pertaining to Disability Insurance Benefits (DIB) are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416. As is relevant to this case, the DIB and SSI statutes are identical. Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Most citations herein are to the DIB regulations out of convenience.

2

Appeals has explained this process as follows:

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

***Weatherbee v. Astrue*, 649 F.3d 565, 568-569 (7th Cir. 2011).**

Stated another way, it must be determined: (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is serious; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience. **20 C.F.R. §§ 404.1520; *Simila v. Astrue*, 573 F.3d 503, 512-513 (7th Cir. 2009); *Schroeter v. Sullivan*, 977 F.2d 391, 393 (7th Cir. 1992).**

If the answer at steps one and two is "yes," the claimant will automatically be found disabled if he or she suffers from a listed impairment, determined at step three. If the claimant does not have a listed impairment at step three, and cannot perform his or her past work (step four), the burden

shifts to the Commissioner at step five to show that the claimant can perform some other job. ***Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984).** See also, ***Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001**) (Under the five-step evaluation, an "affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled… If a claimant reaches step 5, the burden shifts to the ALJ to establish that the claimant is capable of performing work in the national economy.").

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. It is important to recognize that the scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." **42 U.S.C. § 405(g)**. Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. See**, *Books v. Chater*, 91 F.3d 972, 977-78 (7th Cir. 1996)(citing *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995))**.

The Supreme Court has defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." ***Richardson v. Perales*, 402 U.S. 389, 401 (1971).** In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the

4

ALJ. ***Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997)**. However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See, ***Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.**

### The Decision of the ALJ

ALJ Janney followed the five-step analytical framework described above. He determined that plaintiff had not been engaged in substantial gainful activity since his application date. The ALJ found that plaintiff had severe impairments of spina bifida, cognitive disorder, anxiety disorder, and history of depressive disorder, not otherwise specified. The ALJ further determined that these impairments do not meet or equal a listed impairment

The ALJ found that plaintiff had the residual functional capacity (RFC) to perform work at the medium level, with physical and mental limitations. Based on the testimony of a vocational expert (VE), the ALJ found that plaintiff was unable to perform his past work, but he could perform other jobs which existed in significant numbers in the national and local economy. (Tr. 18-27).

### The Evidentiary Record

The court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the points raised by the plaintiff.

1. **Agency Forms**

Plaintiff was born in 1966 and was forty years old at his alleged onset date. (Tr. 111). He was six feet tall and weighed one hundred and forty-five

pounds. (Tr. 115). He completed the eighth grade and was enrolled in special education classes. He previously worked for waste management companies as a truck driver and garbage collector. (Tr. 116).

Plaintiff submitted a function report in June 2011. He lived in a house with his mother. (Tr. 131). He stated that his mother took care of him but he could prepare his own simple meals and was able to take care of his dog. (Tr. 132-33). He had a driver's license and could go places on his own. He went outside daily for walks and shopped for necessary items two or three times a week. (Tr. 134). He had no social activities and was unable to handle his own finances. (Tr. 134-35). Plaintiff claimed to have difficulty completing tasks, concentrating, understanding, and following instructions. He could walk three miles before needing a rest and was not sure how well he could follow instructions. (Tr. 136). He had difficulty getting along with others and was fired from every job he had as a result. (Tr. 137).

Plaintiff's mother also submitted a function report in June 2011. (Tr. 145-51). She stated that her son was a "loner" and had difficulty handling stress appropriately. (Tr. 146, 151). His only hobbies were reading the Bible, going to church, and going for walks. (Tr. 149). She felt plaintiff was unable to handle his own finances and his illnesses were getting worse as he got older. (Tr. 146).

## 2. Evidentiary Hearing

Plaintiff was represented by counsel at the evidentiary hearing on January 7, 2013. (Tr. 33). At the time of the hearing, plaintiff was forty-six years old, six

feet tall, and weighed one hundred and fifty pounds. (Tr. 35-36). He completed the eighth grade and stopped trying to get his GED because he "just couldn't do it." (Tr. 36). He lived with his mother and he did not have health insurance or a medical card. (Tr. 37).

Plaintiff testified that he previously worked for a waste management company where he drove trucks and helped load garbage into the trucks. He stated that the trash cans sometimes weighed over fifty pounds and may have weighed over one hundred pounds when they were wet from rain or snow. (Tr. 37).

Plaintiff stated he was fired from his job because he could not learn the route and had problems with his boss. (Tr. 39-40). He felt his comprehension skills and ability to concentrate were his biggest problems. (Tr. 42, 44). He had difficulty articulating why he could not work, but stated that he was frequently distracted and "things get lost" in his mind. (Tr. 43-45).

A vocational expert (VE) also testified that plaintiff's past work as a garbage collector and driver was medium or heavy and semiskilled. (Tr. 48-49). The ALJ asked him to assume a person of plaintiff's age, education and work experience, who could do work at the medium exertional level, and could frequently climb ladders, ramps, stairs, ropes, scaffolding, scoot, and crouch. Due to moderate difficulties maintaining sustained concentration, persistence or pace, the person could remember and carry out rote or routine instructions that would require limited judgment or decision making for two hour work segments, but could not perform tasks that are complex or detailed in nature.

7

Additionally, the person should work at a task or object-oriented setting as opposed to a service-oriented setting and could have no work related interaction with the public. (Tr. 49).

The VE testified that this person could not do plaintiff's past work as a garbage truck driver and collector, but he could do other jobs that exist in significant numbers in the national and regional economy. (Tr. 49-52). The VE also testified that all available work would be precluded if a person were off task ten to twelve percent of the workday. (Tr. 51).

### 3. Medical Record

In 2012, plaintiff received an individualized treatment plan and a comprehensive mental health assessment from Jefferson County Comprehensive Services. (Tr. 230-60). In plaintiff's mental health assessment, he stated he came to the agency because he had a decreased attention span, confusion, depression, trouble falling asleep, and was previously diagnosed with bipolar disorder. (Tr. 235). The record notes that in 1988 plaintiff was hospitalized for a suicide attempt. (Tr. 238). He stated he was unemployed because he was easily distracted and was unable to do what he was told. (Tr. 242). He did not take any medications. (Tr. 244). He was diagnosed with psychosis NOS, borderline intellectual functioning, and assigned a GAF score of 52. (Tr. 257).

Plaintiff only has one treatment note from Jefferson Country Comprehensive Services. He was diagnosed with anxiety disorder NOS, cognitive disorder NOS,

past depressive disorder, alcohol dependence in full remission for sixteen years, and assigned a GAF score of 55. (Tr. 229).

### 4. Consultative Examinations

In August 2011, plaintiff had a psychological examination with state agency psychologist Fred Klug. (Tr. 191-95). Plaintiff's dress, hygiene, and grooming were unkempt. He dramatically looked around the room before answering any questions but he was oriented to time, place, and person. He performed serial 3s with one error through five calculations and was unable to spell "truck" forward or backwards. His immediate memory and short-term memory were impaired, he had problems encoding, his long-term memory was marginal, and his fund of knowledge for remote facts was very restricted. (Tr. 192). Dr. Klug stated plaintiff's reasoning, abstract thinking, judgment, and insight were all poor. (Tr. 139). Plaintiff's attention span was adequate but concentration was poor, and his intellectual functioning appeared borderline. (Tr. 194). His affect was appropriate and his thought processes were goal-directed and relevant. (Tr. 195).

Plaintiff had a physical consultative examination performed in July 2011 by internist Raymond Leung, M.D. (Tr. 184-89). Dr. Leung's diagnostic impression was spina bifida. Plaintiff's extension of the lumbar spine was limited to five degrees and he walked with a minimal waddle. Otherwise, plaintiff's examination was normal. (Tr. 186).

### 5. RFC Assessments

9

State agency psychologist Howard Tin assessed plaintiff's mental RFC in August 2011. He reviewed plaintiff's records but did not examine plaintiff. He used an agency form that is commonly used for this purpose in social security cases. (Tr. 212-14). This form is referred to as the Mental Residual Functional Capacity Assessment, or MRFCA. Section I of the form consists of a list of mental activities. The consultant is asked to set forth his "summary conclusions" by checking a box to rate the severity of limitation as to each activity. He checked the box for "moderately limited" for a number of activities including the following:

- Ability to understand and remember detailed instructions;
- Ability to carry out detailed instructions;
- Ability to maintain attention and concentration for extended periods
- Ability to perform activities within a regular schedule, maintain regular attendance, and be punctual within customary tolerances;
- Ability to work in coordination with or proximity to others without being distracted by them;
- Ability to interact appropriately with the general public, get along with coworkers or peers without distracting them or exhibiting behavioral extremes;
- Ability to set realistic goals or make plans independently of others. (Tr. 212-23).

In section III of the form, the consultant is asked to explain his summary conclusions in narrative form. Dr. Tin noted plaintiff's consultative examination

results and stated plaintiff had difficulty carrying out detailed instructions and maintaining attention and concentration for extended periods. He opined that plaintiff could perform simple tasks and respond to changes in work setting, but he should not perform work that requires interaction with the general public. (Tr. 214).

In August 2011, state agency physician C.A. Gotway completed an assessment of plaintiff's physical RFC capabilities. (Tr. 217-23). He also reviewed plaintiff's records but did not examine plaintiff. He felt plaintiff could occasionally lift fifty pounds, frequently lift twenty-five pounds, and stand, walk, and sit for about six hours in an eight hour workday. (Tr. 217). Additionally, he felt plaintiff could frequently climb ramps, stairs, ladders, ropes, and scaffolds, stoop, and crouch. (Tr. 218).

## Analysis

Plaintiff first argues that the ALJ erred in forming his RFC assessment by not including additional restrictions regarding plaintiff's moderate limitations in concentration, persistence or pace.

Plaintiff argues that the hypothetical posed to the VE is deficient because it did not account for all of the moderate limitations found by Dr. Tin. Most notably, he feels that the hypothetical question did not address plaintiff's moderate limitations in ability to maintain attention and concentration for extended periods. Plaintiff also relies on Dr. Klug's opinion that his ability to concentrate was poor. (Tr. 194).

Plaintiff cites **O'Connor-Spinner v. Astrue, 627 F.3d 614 (7th Cir. 2010),** a case which is directly applicable. Having accepted the opinion of Dr. Tin and seemingly accepting the opinion of Dr. Klug, the ALJ was required under **O'Connor-Spinner** to include plaintiff's limitations in ability to maintain concentration in the hypothetical question posed to the VE. The ALJ asked a series of hypothetical questions. The question that most closely corresponded to ultimate RFC findings included mental limitations of "rote or routine instructions that would require the exercise of limited judgment or decision making for two-hour work segments." (Tr. 49).

In **O'Connor-Spinner**, the Seventh Circuit held that, "In most cases… employing terms like 'simple, repetitive tasks' on their own will not necessarily exclude from the VE's consideration those positions that present significant problems of concentration, persistence and pace." **O'Connor-Spinner, 627 F.3d at 620.** The reason for this holding is that there is a distinction between "the ability to stick with a given task over a sustained period" and "the ability to learn how to do tasks of a given complexity." **Ibid**. ALJ Janney made an effort to address both the complexity of task and the sustained period of time by limiting it to rote or routine instructions requiring limited judgment or decision making for two-hour time segments. (Tr. 49).

That being said, the RFC assessment is still fatally flawed because there is a complete lack of evidence and analysis supporting the determination that plaintiff could stay focused for two hours at a time. In fact, the ALJ included

the two-hour restriction in the summary of the RFC assessment (Tr. 23), but never mentioned it again. (*See* Tr. 18-27).

In an attempt to save the RFC assessment, the Commissioner argues that it is supported by the opinions of Dr. Klug and Dr. Tin. It is true that both doctors opined that plaintiff's attention span was adequate to complete simple tasks. However, neither doctor indicated that he could stick with those tasks for two hours at a time (Tr. 210, 214). *See* **O'Connor-Spinner, 627 F.3d at 620,** "The ability to stick with a given task over a sustained period is not the same as the ability to learn how to do tasks of a given complexity."); **Walters v. Astrue, 444 F. App'x 913, 918 (7th Cir. 2011)** (noting that an individual with an attention span that is "adequate to attend to a simple work routine" does not necessarily have "the ability to concentrate on that routine for very long"); **20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00(C)(3)** (explaining that an individual able to complete a variety of simple tasks may still have limitations in concentration, persistence, or pace because they need extra supervision or assistance, their work is below quality and accuracy standards, or they are unable to work without unreasonable rest periods, undue interruptions, or undue distractions).

The only thing in the ALJ's decision that could possibly be considered as evidence supporting the two-hour restriction is the ALJ's finding that during plaintiff's consultative examination with Dr. Klug "[h]is attentional span was adequate" (Tr. 24). However, the ALJ failed to describe *how* plaintiff's ability to pay attention to Dr. Klug's questions for 45 minutes during a structured,

13

interactive psychological examination translates into an ability to maintain focus in a work setting for twice as long without any supervision or prompting to bring him back to task. Simply put, there is no evidence or analysis the Court can see supporting the two-hour restriction. This is error. See, **SSR 96-8 at \*7**, *Stewart v. Astrue*, **561 F.3d 679, 684 (7th Cir. 2009)**.

Furthermore, this Court agrees with plaintiff that the two-hour restriction does not sufficiently address the amount of lost work time plaintiff could be expected to experience due to his moderate limitation in concentration, persistence, or pace. In other words, even if plaintiff could stay focused for a two-hour interval, he might still lose 10-12% of the workday taking rest breaks or becoming distracted between intervals. The VE testified that if plaintiff was off-task for as little as 10-12% of the workday he would be unemployable (Tr. 51). On remand, the ALJ should be sure to adequately address how plaintiff's limitation in concentration, persistence, or pace translates into lost work time.

The ALJ is "required to build a logical bridge from the evidence to his conclusions**."** *Simila v. Astrue*, **573 F.3d 503, 516 (7th Cir. 2009).** The ALJ needed to explain how two-hour work segments would account for plaintiff's moderate limitations in concentration, persistence or pace. ALJ Janney simply failed to do so here. "If a decision 'lacks evidentiary support or is so poorly articulated as to prevent meaningful review,' a remand is required." *Kastner v. Astrue*, **697 F.3d 642, 646 (7th Cir. 2012), citing** *Steele v. Barnhart*, **290 F.3d 936, 940 (7th Cir. 2002).**

It is not necessary to address plaintiff's other points at this time. The Court wishes to stress that this Memorandum and Order should not be construed as an indication that the Court believes that Mr. Kelly is disabled or that he should be awarded benefits. On the contrary, the Court has not formed any opinions in that regard, and leaves those issues to be determined by the Commissioner after further proceedings.

## Conclusion

Plaintiff's Motion for Summary Judgment (Doc. 16) is **GRANTED**. The Commissioner's final decision denying Bradley Kelly's application for social security disability benefits is **REVERSED** and **REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence four of 42 U.S.C. §405(g).

The Clerk of Court is directed to enter judgment in favor of plaintiff.

**IT IS SO ORDERED.**

**DATE: April 28, 2015.**

> **s/ Clifford J. Proud**
> **CLIFFORD J. PROUD**
> **UNITED STATES MAGISTRATE JUDGE**